No. 87-502

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

LEONARD J. SJOBERG,

        Plaintiff and. Respondent,

-vs-

DONALD KRAVIK AND FRIEDA KRAVIK,

        Defendants and Appellants.

---

APPEAL FROM: The District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jardine & Grauman; John H. Jardine, Whitehall,
        Montana

    For Respondent:

        Corette, Smith, Pohlman & Allen; Marshal Mickelson,
        Butte, Montana

---

Submitted on Briefs: March 24, 1988

Decided: JUL 1 9 1988

Filed: JUL 1 9 1988

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the court.

Defendants/appellants, Donald and Frieda Kravik, appeal a District Court decision favoring plaintiff/respondent Leonard Sjoberg. Trial was held without a jury on May 20, 1987 in the Second Judicial District, Silver Bow County. The District Court awarded Sjoberg $43,100 in damages, $343.60 in costs, and $9,200 for attorney's fees. We affirm in part and reverse in part.

On May 30, 1980 Sjoberg and the Kraviks signed a "contract for sale of real property and escrow agreement." The land consists of approximately forty acres and is located in Madison County. As buyer, Sjoberg agreed to pay $52,500 with $11,000 as a down payment. Afterward, payments were to be made in fifteen annual installments of $5,456, with the first payment on May 1, 1981. The agreed interest rate was 10% per annum on the unpaid balance.

The forty acres which was the subject of the sale was part of farmland owned by the Kraviks. The Kraviks land, including these forty acres, was encumbered by a mortgage with the John Hancock Insurance Company. The mortgage had been duly recorded and Sjoberg entered the purchase agreement knowing the mortgage existed. The purchase agreement included a specific clause addressing the eventual release of the Hancock mortgage:

> The buyer enters into this agreement with the knowledge and understanding that the real property above described is subject to a mortgage to the John Hancock Mutual Life Insurance Company recorded at book 257, pages 730-738 of Mortgage Records of Madison County, Montana, on April 3, 1978. Buyer agrees that the seller shall not cause said mortgage to be released of record until the sellers obtain at least $250,000 in sales of land of which the above real estate is a part or within one

2

> year from the date of this agreement.
> Upon such event. the seller shall cause to
> be filed a partial satisfaction of said
> mortgage to the above described real
> property.

The parties agreed to an amendment to the above contract on June 12, 1980. The amendment provided that after the Hancock mortgage was released, the Kraviks would subordinate their contract interest to one acre so that the one acre would be free of both the Hancock mortgage and the Kravik contract. The express purpose of the amendment was to allow mortgage financing.

Sjoberg made his first payment on the forty acres in 1981 without incident. On May 6, 1981 Sjoberg wrote a letter to Donald Kravik stating that Kravik was to have the Hancock mortgage released by May 31, 1981 according to the terms of their original contract. However, Kravik was not able to *obtain* the release and failed to do so until April 1986.

On January 15, 1982, Sjoberg purchased an additional twenty acres from the Kraviks for the price of $19,200, with $1,000 as a down payment. Payments were to be made in fifteen annual installments of $2,392.75. The agreed interest rate was 10% per annum. The first payment was to be made May 1, 1982 and the remaining payments were to occur on the first day of each year thereafter. This contract also contained a clause specifically addressing the Hancock mortgage which was very similar to the clause in the first contract between Sjoberg and the Kraviks. Specifically, the clause in the second contract stated:

> The buyer enters into this agreement with
> the knowledge and understanding that the
> real property above described is a
> portion of a larger tract of Land
> consisting of approximately 1,515 acres
> which is subject to a mortgage to the
> John Hancock Mutual Life Insurance

Company, recorded at book 257, pages 730-738 of the Mortgage Records of Madison County, Montana, on April 3, 1978. Approximately 493 acres of the larger tract have been subdivided into smaller acreage tracts, The land herein being sold is one of these acreage tracts. The sellers are in the process of selling the subdivided acreage tracts, and when there is at least $250,000 in sales of the acreage tracts or within 1 year, the seller shall obtain from the above named mortgagee, a full satisfaction of mortgage as to the subdivided acreage tracts and shall place the same of record.

On April 20, 1982 Sjoberg's attorney sent a letter to the Kraviks stating that the Kraviks were in default of the contract entered May 30, 1980 for the forty acre tract. The letter explained that default occurred because the Kraviks failed to obtain the release of the Hancock mortgage on May 31, 1981 as promised in the contract, and demanded that the Kraviks cure the default within the time provided in the agreement. The agreement provided that if the buyer defaulted, the sellers could terminate the agreement after written notice, but only if the buyer did not cure the breach within sixty days after the notice. Although the agreement did not expressly contemplate the procedure in the event of a breach by the sellers, it appears that Sjoberg's attorney was addressing this sixty day grace period and demanding that the Kraviks obtain a release of the Hancock mortgage within the sixty day period following the written notice and demand.

On May 1, 1982, Sjoberg did not make any payment on either of the two contracts entered. On June 8, 1982, Sjoberg attempted to make payment an both contracts, but did so under the provision that the escrow agent hold the check in escrow and not actually deliver the payment. Under those terms, the escrow agent rejected the payment. Also on June 8, 1982, Sjoberg's attorney sent a Letter to the Kraviks

4

notifying them that they were in default on the contract for the purchase of the twenty acre tract because the Haneock mortgage was not released. The letter stated that the agreement entered on January 15, 1982 stated that "when there is at least $250,000 in sales of these acreage tracts or within one year, seller shall obtain a full satisfaction of mortgage . . . " Although the letter did not specify the reason for breach, one year had not passed since the date of the contract. Therefore, the allegation must have been that the Kraviks had by that time sold at least $250,000 worth of their total acreage. The letter demanded that the Kraviks obtain the mortgage release within the time provided in the contract.

On July 2, 1982, an attorney for the Kraviks wrote a Letter to Sjoberg stating Sjoberg was in default on the contracts by failing to make payments when they were due. Sjoberg responded by making the payments within the specified grace period of sixty days.

Sjoberg filed a lawsuit against the Kraviks April 7, 1983 and alleged they had breached both contracts and damaged him in the amount of $71,700, the total sale price of the two tracts of land. Sjoberg has stated he deposited the 1983 payments en both tracts in a bank account pending the outcome of the lawsuit. No further payments have been made on the contracts. On April 11, *1986,* the Kraviks obtained the release on the Hancock mortgage as a result of another lawsuit. The Kraviks then sent Sjoberg a notice of default on May 16, 1986 alleging Sjoberg had failed to render any payments since 1982. The District Court stayed all proceedings regarding this default pending the outcome of the litigation.

A bench trial was held May *20, 1987.* Plaintiff Sjoberg alleged he had intended to construct a house and develop a horse farm on the property, but was unable to obtain any

5

financing for the construction because of the Hancock mortgage. The District Court found that the Kraviks materially breached the contracts by failing to obtain a release of the Hancock mortgage, Sjoberg claimed a number of damages including loss of profits and good will regarding the horse farm which the District Court denied because they were too speculative. However, the District Court did award Sjoberg damages totaling $43,100, which Sjoberg claimed to have sustained due to a general increase in costs of construction of various buildings, equipment, power, wells, and a horse trailer and truck, The District Court also awarded attorney's fees in the amount of $9,200 and costs of $343.60. In the District Court's final judgment, it found there was a total. of $56,529.38 remaining on the principal balances due and owing under both contracts, and that the total amount awarded to Sjoberg was $52,643.60. Therefore, the District Court concluded that upon Sjoberg paying the difference, $3,885.78, both contracts would be paid in Full and the obligations of all parties fulfilled.

Defendants/appellants, the Kraviks, appeal and raise issues which may be addressed as follows:

1. Did the Kraviks' failure to obtain a **release** of the Hancock mortgage constitute a breach of the contract which entitled Sjoberg to stop payments?

a. Were the damages awarded Sjoberg correctly calculated?

3. Has the Kraviks' appeal been rendered moot?

1. Breach of the contract.

The Kraviks admit they were unable to obtain a timely release of the mortgage as promised in both contracts, The releases were not obtained until April. 11, 1986, and under the terms of the contracts the releases should have been obtained no later than May 31, 1981 for the forty acre tract and January 15, 1983 for the twenty acre tract. The Rraviks

6

maintain, however, that their breach was not a breach which constituted default and was not sufficient enough to allow Sjoberq to stop payments. Instead, they contend that Sjoberg's sole remedy was to continue with the payments and sue for whatever damages he incurred.

If a contracting party materially breaches the contract, the injured party is entitled to suspend his performance, and the determination of whether a material breach exists is a question of fact. E. Farnsworth, Contracts, § 8.16 (1982). The contracts included specific provisions directing the mortgage release. The District Court found that "the specific purpose of the provision . . . was to allow Sjoberg to have the property free of the mortgage and subject only to the purchase contract so that he could obtain financing to begin to develop the property as a horse ranch.'" The District Court concluded that the Kraviks breach was a material breach. We agree with the District Court because the Kraviks breach substantially effected the purpose of the contract. Sjoberq probably would not have entered the contract had he known the mortgage would not be released. We hold that the Kraviks" breach was material and constituted a condition entitling Sjoberg to stop his payments under the contracts.

The Kraviks contend that this holding would conflict with the rule that under an installment sales contract the seller does not have to produce marketable title until the date set for final payment and tender of the deed. Scheitlin v. R & D Minerals (Mont. 1985), 701 P.2d 1388, 2390, 42 St.Rep. 986, 988 (citing Silvast v. Asplund (1933), 93 Mont. 584, 592, 20 P.2d 631, 636). However, this decision does not run contrary to this rule because the parties specifically agreed the mortqaqe would be released no later than one year after the contracts were entered.

3

## 2. DAMAGES

This action was commenced when Sjoberg filed a complaint in the District Court alleging breach of the two real. estate contracts because the John Hancock Insurance Company release had not been obtained within a year. He sought total damages of $71,700, Sjoberg thus chose to stand on the contract and to seek damages for its breach.

In their answer to the complaint, Kraviks tendered a third defense and counter claim in which they agreed that under the terms of the contracts they were to deliver marketable title in the sellers; and they could not do so because they were unable to secure the release from the John Hancock Mutual Life Insurance Company; that obtaining the release was not possible and that the Kraviks were ready, willing and able to restore to Sjoberg all payments made by him under his contracts and by reason of the doctrine of mutuality of remedy, sought to rescind the contracts and restore the parties to their status at the time of entering into the contracts. No other pleadings were thereafter filed in the nature of supplementary pleadings.

While the action was pending, in April of 1986 through another litigation, the release of the property from the mortgage of John Hancock Mutual Life Insurance was obtained. On May 16, 1986, Kraviks served notices of default upon Sjoberg for each of the contracts, on the grounds that no payments had been made by Sjoberg to keep the contracts in effect. Upon receipt of the default notices, counsel for Sjoberg went to court and obtained a stay of default on the contracts until further order of the court.

In its findings and conclusions, the District Court found that the provision in the contracts requiring the John Hancock Mutual Life Insurance Company releases was material to the contracts, and that the Kraviks' failure to produce such releases constituted a material breach of the contracts.

8

It concluded therefore that Sjoberg's obligation to make payments ceased on the failure of the Kraviks to obtain the mortgage releases . The court however further found that Sjoberg was obligated to pay under the contracts commencing with the payments due in May of 4988, but that no interest should accrue on the contracts between the date of the last payment in 1982 and May 1988 because of the Kraviks' material breach.

The District Court also found that Sjoberg was damaged through the Kraviks' breach in the sum of $18,000 for the increased costs of building a house , barn and other outbuildings; $10,000 for the increased costs of purchasing a tractor, plow and irrigation equipment; $1,600 for the increased costs of obtaining power to the pump and digging wells; and $13,500 for the increased costs of obtaining a horse trailer and appropriate truck. The District Court found the total amount of damages was $43,100.

The findings of the District Court are not clearly erroneous, Rule 52(a), M.R.Civ.P., and the application of legal principles to the fact situation by the District Court is proper.

The court did award attorney's fees in the sum of $9,200 to Sjoberg based upon the reciprocity statute, § 28-3-704, MCA, and the following in the contracts:

> In the event the Sellers must resort to
> legal action to remove the Buyer from the
> premises, or seek return of the property,
> after Default and Notice, the Buyer
> hereby specifically agrees to pay all the
> court costs and reasonable attorney fees
> incurred by the Seller in such action.

Neither of the parties are entitled to attorney's fees in this action. While Kraviks breached the contracts by not providing the John Hancock releases, Sjoberg also breached the contracts when he did not begin making payments on the contracts when he became obligated to do so in May of 1986.

9

We hold it would be inequitable to award attorney's fees or costs to either party in this case.

### 3. MOOTNESS

In its judgment, the District Court offset the amounts due to the Xraviks under the contracts with the amounts it found as damages, attorney's fees and costs awarded to Sjoberg leaving a net of $3,885.78. The judgment provided that upon payment of that sum to the escrow holder, the escrow holder was to deliver the escrow documents, including the warranty deed to Sjoberg, at which time the contracts would be deemed paid in full and the obligations of all the parties fulfilled. During the pendency of this appeal, Sjoberg has made that payment to the escrow holder and now claims that the cause is moot because the terms of the judgment have been fulfilled by him.

Because we have found that Kraviks are entitled to effective relief on appeal, we do not find the judgment to be moot. See Martin Development Company v. Keeney Construction Company (Mont. 1985), 703 P.2d 143, 147, 148, 42 St.Rep. 752, 757, 75%.

### 4. CONCLUSION

Accordingly, we affirm in part and reverse in part the judgment of the District Court. We affirm the determination of the District Court that the sum of $56,529.38 is due to the Kraviks from Sjoberg as principal due and owing on both contracts. Kraviks should additionally receive interest on $56,529.38 at the rate of 10% per annum from May 16, 1986 until the date of the judgment appealed from. We affirm the findings of the District Court that Sjoberg is entitled to damages from the Rraviks in the sum of $43,100, and agree that this sum may be offset against the principal balance due on the contracts of Sjoberg to Rraviks as of the date of said judgment. Thereafter Kraviks are entitled to receive judgment interest at the rate of 10% per annum on the net

10

principal amount due from and after the judgment date until paid. (Post judgment interest shall not include interest on interest.) We determine that neither party is entitled to attorney's fees and costs in this action. We remand this cause to the District Court for such further proceedings as may be necessary to reverse the delivery of the warranty deed from the escrow holder to Sjoberg until such time as the amounts due under this opinion are fully paid.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11