No. 88-07

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

WILLIAM K. SCHULTZ,

        Plaintiff and Respondent,

  -vs-

CRAIG A. STEVENS and STEVENS
CONSTRUCTION, INC.,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Harris & Seidler; Nancy C. Seidler, Billings, Montana

    For Respondent:

        Peterson, Schofield & Leckie; K.D. Peterson, Billings,
Montana

---

Submitted on Briefs:  June 9, 1988

Decided:  July 19, 1988

Filed:  JUL 1 9 1988

*Ethel M, Harrison*

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Defendants, Craig A. Stevens and Stevens Construction, Inc., appeals the decision of the District Court of the Thirteenth Judicial District, Yellowstone County, ordering that the defendants pay the plaintiff, William K. Schultz, nineteen thousand eight hundred dollars ($19,800.00) plus 10 percent interest from May 21, 1984, as a result of the promissory note executed by Stevens on behalf of himself and the Stevens Construction, Inc. We affirm and remand.

The sole issue on appeal is whether the District Court erred in interpreting the promissory note and mortgage executed between the plaintiff Schultz and the defendants Stevens and Stevens Construction, Inc.

Plaintiff-respondent, William K. Schultz, was a licensed realtor in Billings from approximately 1982 to 1985. Schultz was looking at houses when he first met defendant-appellant, Craig A. Stevens, in 1981 or 1982. At that time, Schultz owned Lots 21 and 22 in Block 1, Lillis Heights Subdivision and Stevens expressed an interest in purchasing these two lots. Stevens purchased these lots and eventually built a house on Lot 22. Schultz subsequently had Stevens build a house for him on Lot 18 for resale but instead moved into the house himself.

While building Schultz's house on Lot 18, Stevens expressed an interest in building a house on another lot owned by Schultz. Schultz agreed to convey by warranty deed this lot, Lot 4, Block 1, Lillis Heights Subdivision, to Stevens for $19,800. Prior to delivering the deed to Lot 4 to Stevens, Schultz had Stevens execute a promissory note and

mortgage that was dated May 21, 1984. The promissory note executed by Stevens reads as follows:

> For Value Received the undersigned CRAIG A. STEVENS AND STEVENS CONST. INC., OF BILLINGS MONTANA, promise to pay to the order of William K. Schultz, of Billings, Montana, the sum of Nineteen Thousand Eight Hundred ($19,800.00), as follows:
>
> The aforementioned amount shall, together with interest thereon the annual rate of 10%, shall be due and payable in a single payment upon sale of the House to be constructed on Lot-4 Block-I Lillis Hts. Sub. . . .
>
> If this Note is not paid when due, and is placed by the holder in the hands of an attorney for Collection through legal proceedings or otherwise the undersigned shall pay a reasonable attorney's fee to such . . . [holder], together with the costs and reasonable expenses of collection.

Stevens signed the promissory note for himself individually and for Stevens Construction, Inc. Stevens is the sole owner of the Stevens Construction, Inc. The mortgage was never acknowledged or recorded.

Before Stevens could begin building the house on Lot 4, he had to obtain a construction loan. He obtained this loan from the First Bank Billings (Bank). Stevens did not disclose to the Bank his previous obligation to Schultz as evidenced by the signed promissory note and accompanying mortgage.

When the building of the house was approximately two-thirds finished, Schultz listed the house for sale, advertised it, and held open houses. Before the house was sold, Schultz retired from the real estate business. After his retirement, Schultz's only contact with the house was when he occasionally drove by the house.

In the meantime, sometime prior to December, 1985, Stevens' construction loan became delinquent. Stevens then

conveyed Lot 4 and the house to the Bank in consideration for the cancellation of the construction loan obligation of Stevens. The lot and house was deeded to the Bank on January 27, 1986. Schultz received no notice of this transfer and conveyance of real property.

Schultz first became aware that something had "happened" with the house when he noticed on one of his drives by the house that the "For Sale" sign had been removed. In early April, 1986, upon further inquiry, he learned that the property had been transferred to the Bank. The Bank would not allow Schultz to purchase its interest because of a pending sale of the property. The Bank sold the property by deed dated April 22, 1986. Schultz subsequently filed this action in the Thirteenth Judicial District Court, Yellowstone County.

The District Court found that the promissory note signed by Stevens is valid, legally binding and unambiguous; that the note is in default and is due and payable in full with 10 percent interest stemming from May 21, 1984; and that pursuant to the terms of the promissory note, Schultz is entitled to reasonable attorney fees and costs.

The issue raised on appeal is whether the District Court erred in interpreting the promissory note and mortgage executed by Stevens on behalf of himself and the Stevens Construction, Inc.

Stevens argues that the intentions of the parties should be introduced by extrinsic evidence because the term "sale" is ambiguous and subject to interpretations. More specifically, Stevens argues that the transfer of the property to the Bank was not a sale within the intentions of either party when they contracted on May 21, 1984. Stevens also argues that the sale anticipated by the parties was a

sale by Stevens, not a sale which occurred after the property had been deeded back to the Bank. We disagree.

General principles of contract law are applicable in this instance. A basic principle in contract law, codified by statute, is that "words of a contract are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense or unless a special meaning is given to them by usage . . .." Section 28-3-501, MCA. Webster's Dictionary defines the term sale as "the transfer of ownership of and title to property from one person to another for a price." Webster's Ninth New Collegiate Dictionary 1037 (1984). Black's Law Dictionary cites cases defining "sale" as "[a] contract whereby property is transferred from one person to another for a consideration of value, implying the passing of the general and absolute title, as distinguished from a special interest falling short of complete ownership." Black's Law Dictionary 1503-04 (4th ed. 1968) (citing Arnold v. North American Chemical Co. (1919), 232 Mass. 196, 122 N.E. 283, 284; Faulkner v. Town of South Boston (1925), 141 Va. 517, 127 S.E. 380, 381).

In the present case, Stevens transferred absolute title to Lot 4 and the house to the Bank. In exchange for the title to the property, the Bank gave valuable consideration by releasing Stevens from his construction loan debt to the Bank and the costs and expenses of the foreclosure. A transfer of property in exchange for valuable consideration constitutes a sale. In light of the above, the transaction between Stevens and the Bank regarding Lot 4 and the accompanying house is a sale.

Stevens nonetheless argues that extrinsic evidence is needed to show the intentions of the parties. However, the intentions of the parties are evidenced by the language used in the instruments, Glacier Campground v. Wild Rivers, Inc.

(1978), 184 Mont. 543, 547, 597 P.2d 689, 692, and as discussed above, the ordinary and popular usage of the term "sale" includes the transfer of the property to the Bank. The introduction of any such extrinsic evidence would only create ambiguity that otherwise does not exist. Stevens also argues that the term "sale" is ambiguous. We disagree. Ambiguity exists only when a contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. Martin v. Laurel Cable TV, Inc. (Mont. 1985), 696 P.2d 454, 457, 42 St.Rep. 314, 317; Souders v. Montana Power Co. (1983), 203 Mont. 483, 486, 662 P.2d 289, 290. Upon applying the basic principle that the words of a contract are to be understood in their ordinary and popular sense, no ambiguity exists.

We affirm the District Court's decision and remand this matter to the District Court for a determination of costs, and reasonable attorney fees arising as a result of this appeal.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 6 -