No.  92-200

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

SHAWN CADY,

        Plaintiff, Counter-Defendant
           and Respondent,

   -vs-

WILLIAM D. BURTON and
DEBRA A. BURTON,

        Defendants, Counter-Claimants
           and Appellants.

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

       Alan J. Lerner, Attorney at Law, Kalispell, Montana

       For Respondent:

       Robert B. Allison, Attorney at Law, Kalispell,
       Montana

**FILED**

APR 1 3 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  December 22, 1992

Decided:  April 13, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

William and Debra Burton appeal from the findings of fact, conclusions of law, and judgment entered by the Eleventh Judicial District Court, Flathead County, rescinding two contracts for the sale and purchase of real property. We affirm in part and reverse in part.

We restate the issues on appeal as follows:

1. Did the District Court err in concluding that the contracts prohibited the Burtons from spending the earnest money?

2. Did the District Court err in rescinding the contracts on the basis of material breach?

While on vacation in the Flathead Valley in May of 1988, Shawn Cady (Cady), a resident of California, decided to purchase property in the area. Cady asked Linda Adams (Adams) and Caren Kastner (Kastner), owners of the Pine Cone Kitchen in Bigfork, if the restaurant was for sale and if they knew of other property for sale in the area. Adams and Kastner expressed interest in selling the restaurant and referred Cady to William Burton (Burton), their cousin. Burton and his wife, Debra Burton, were interested in selling a residence (the Echo Lake Residence) and a shopping complex (the Burton Complex).

Over the next several weeks, the parties executed a number of documents relating to the purchase and sale of the Echo Lake Residence, the Burton Complex, and the Pine Cone Kitchen. On May 18, Cady signed a document entitled Receipt and Agreement to Sell

2

and Purchase with Adams and Kastner pertaining to the Pine Cone Kitchen. The agreement required Cady to pay $5,000 as earnest money. Additionally, the agreement provided that Cady could extend the closing for 90 days by paying an additional $5,000 earnest money.

On May 19, Cady and the Burtons executed two documents entitled Receipt and Agreement to Sell and Purchase: one for the Echo Lake Residence and the other for the Burton Complex. By their terms, the agreements were not effective until Cady paid earnest money in an unspecified amount. The agreements contained no other provisions regarding earnest money.

Cady and the Burtons subsequently executed documents entitled Exhibit "A", Addendum to Purchase and Sale Agreement, and Addendum, Part Two. The exhibit and addenda expressly clarified the terms of the two earlier agreements for the sale and purchase of the Echo Lake Residence and the Burton Complex. Under the terms of Exhibit "A", dated May 28, Cady was required to pay $5,000 as earnest money for each property. The first addendum, dated June 6, provided that the closing on both properties would take place on August 1; it permitted Cady to extend the closing on both properties by paying an additional $10,000 earnest money on August 1. The terms "deposit," "depositing" and "held on deposit" were used in the first addendum in reference to the earnest money. The second addendum, dated June 8, also included the term "deposits" in reference to the earnest money.

Although the addenda did not clarify the agreement relating to

the Pine Cone Kitchen, the addenda did refer to the Burtons' receipt of initial earnest money in the amount of $15,000, and directed the Burtons to allocate $5,000 of the earnest money to each of the three properties. Accordingly, Cady sent a check to William Burton in the amount of $15,000. Burton gave $5,000 of the earnest money to Adams and Kastner.

In mid-July, Burton requested that Cady send additional earnest money even though it was not due until August 1. At that time, Burton informed Cady that he had spent the initial earnest money and that he needed the additional earnest money for personal expenses, possibly to avoid bankruptcy. Cady refused to send additional earnest money unless it was deposited in escrow or otherwise withheld from the Burtons' personal use; Burton refused any arrangement that would prevent him from having immediate use of the money. The parties did not close on the properties on August 1, nor did Cady send the additional earnest money required to extend the closing date.

On September 20, Cady filed suit against the Burtons for rescission of the contracts relating to the Echo Lake Residence and the Burton Complex. In addition, Cady alleged that Burton had acted as an agent of Adams and Kastner and, on that basis, sought rescission of the contract regarding the Pine Cone Kitchen. Cady also sought a $15,000 judgment against the Burtons to recoup the earnest money paid on the three properties. The Burtons counterclaimed, seeking specific performance of the Echo Lake Residence and Burton Complex contracts and damages for Cady's

4

alleged breach of the contracts and the implied covenant of good faith and fair dealing. The Burtons subsequently dropped their specific performance claim.

A bench trial was held on November 12, 1991. During the trial, the District Court granted partial summary judgment in favor of the Burtons, dismissing Cady's claim relating to the Pine Cone Kitchen. At the conclusion of the trial, the District Court orally issued its findings and judgment. The court stated that its summary adjudication of the Pine Cone Kitchen contract was premised on its finding that Kastner and Adams were the real parties in interest. The court also found that the terms of the contracts regarding the Echo Lake Residence and the Burton Complex prohibited the Burtons from spending the earnest money prior to closing and, therefore, that the Burtons had breached the contracts. Furthermore, the District Court found the breach to be material. The District Court apparently dismissed the Burtons' counterclaim on the basis that they had committed a material breach that excused Cady's performance under the contract. The court awarded Cady $10,000 plus interest, representing a refund of the earnest money paid by Cady on the Echo Lake Residence and the Burton Complex.

On December 31, 1991, the court filed findings of fact, conclusions of law and judgment consistent with its bench ruling. The court concluded that Cady was "entitled to withdraw" from the contract and to "request refund" of the earnest money relating to the Echo Lake Residence and the Burton Complex. The court denied the Burtons' post-trial motions and the Burtons appealed.

5

Did the District Court err in concluding that the contracts prohibited the Burtons from spending the earnest money?

The District Court found that the original buy-sell agreements, together with Exhibit "A" and the two addenda, constituted the contracts relating to the sale and purchase of the Echo Lake Residence and the Burton Complex. The court also found that while the initial buy-sell agreements did not address the disposition of the earnest money, the addenda included the terms "deposit," "depositing" and "held on deposit." The District Court concluded that the payment of the earnest money was a deposit to be held by the Burtons and that the earnest money was not available to spend at their discretion until closing.

The Burtons contend that the District Court erred in determining that the terms "deposit," "depositing" and "held on deposit" applied to the initial earnest money. They assert that the court relied almost exclusively on the following provision in the first addendum to conclude that they were prohibited from spending the earnest money:

> 4. If buyer agrees to drop the contingency of the sale of buyer's residence in California, then interest on the remaining principal due on the Pine Cone Kitchen and the Echo Lake Residence will commence on January 1, 1989. Interest will be at 10 1/2 percent and will be added monthly to the remaining balance. The principal balance shall be reduced by earnest money payments held on deposit.

According to the Burtons, this provision prevents them from spending additional earnest monies received, but not the initial earnest money, if Cady dropped a contingency provision relating to the sale of his California residence. Nothing in the quoted

6

language, however, creates differing obligations on the Burtons' part with regard to initial versus subsequent earnest money payments.

The Burtons also assert that the referenced provision applies by its terms only to earnest money relating to the Pine Cone Kitchen and Echo Lake Residence and, therefore, does not prevent them from spending the earnest money relating to the Burton Complex. This contention ignores the recurrence of the terms "deposit," "depositing" and "held on deposit" in the two addenda. The following provisions of the first addendum, which are applicable to the contracts for both the Echo Lake Residence and the Burton Complex, are particularly relevant:

> 3. This sale is contingent upon the sale of Buyer's home in California. If seller receives an offer to sell either the Echo Lake Residence or the Burton's Complex, or both, then buyer shall have 72 hours notice to drop this contingency. If buyer declines to drop the contingency, then seller may sell any or all of the properties to a new purchaser. Upon the closing of the sale to the new purchaser, buyer shall receive a full refund of all earnest money paid to date. Until the sale to the new purchaser closes, the purchase agreements between buyer and seller remain in full force and seller shall continue to hold earnest money.

> . . .

> 5. Seller acknowledges receipt of the initial earnest money deposit of $15,000.00, with $5,000.00 allocated to the Pine Cone Kitchen, $5,000.00 to the Echo Lake Residence and $5,000.00 to the Burton's Complex.

Furthermore, the second addendum contains the following provision:

> This additional Addendum and the previous Addendum of June 6, 1988 shall only be valid and will only alter the previous agreements of the parties if Buyer signs and returns the June 6th Addendum and this additional Addendum to Seller by June 11, 1988 AND only if Buyer deposits $15,000.00 earnest money with Seller . . . .

7

Contrary to the Burtons' assertion, the terms "hold earnest money," "earnest money deposit" and "deposits" in these provisions clearly pertain to earnest money paid on both the Echo Lake Residence and the Burton Complex.

The Burtons also contend that the District Court erred in defining the term "deposit." The District Court relied upon the following definition from Black's Law Dictionary:

> To commit to custody, place in the hands of another to be held pending an event occurring, pending a permanent or temporary disposition of the funds, giving possession of personal property by one person to another with his consent; to keep for the use and benefit of the first or of a third person.

The Burtons assert that the District Court should have applied the Black's Law Dictionary definition of the term "deposit" as it is used in the banking industry:

> **In Banking Law**
> The act of placing or lodging money in the custody of a bank or banker, for safety or convenience, to be withdrawn at the will of the depositor or under the rules and regulations agreed on. Also, the money so deposited, or the credit which the depositor receives for it.

On this basis, the Burtons contend that they were free to spend the earnest money in the same manner that a bank is able to use the deposits of its customers. We disagree.

The obvious flaw in this argument is that neither the Burtons nor Cady are bankers. The Burtons and Cady entered into the contracts to purchase and sell real estate as private individuals. It is a well-established principle of contract law, codified in Montana, that words of a contract are to be understood in their ordinary sense. Section 28-3-501, MCA; Schultz v. Stevens (1988),

8

233 Mont. 42, 45, 758 P.2d 287, 288. Under the general definition of the term "deposit," and as commonly understood, deposited money is to be held and kept pending an event—here, the closing of the sale of real estate.

We hold that the District Court properly concluded that the contracts prohibited the Burtons from spending the earnest money relating to the Echo Lake Residence and the Burton Complex.

Whether the District Court erred in rescinding the contracts on the basis of material breach?

Ruling from the bench, the District Court found that the Burtons had breached the contracts by spending the earnest money. Furthermore, the court found that the breach was material.

Findings of fact made by a district court, sitting without a jury, must be affirmed unless the findings are clearly erroneous. Rule 52(a), M.R.Civ.P. We have adopted a three prong test to determine whether a finding is clearly erroneous; the first prong is whether substantial evidence supports the findings. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

The Burtons contend that the District Court erred in finding that the alleged breach was material. Relying on Sjoberg v. Kravik (1988), 233 Mont. 33, 759 P.2d 966, and VanUden v. Hendricksen (1980), 189 Mont. 164, 615 P.2d 220, they contend that a breach is material only if it substantially defeats the object of the contract. They assert that the contract provisions requiring the

earnest money to be held on deposit were only incidental to the purpose of the contracts at issue and, therefore, that even if they breached the provisions, the breach was not material. We agree.

Sjoberg and VanUden reflect our consistent approach to the question of materiality of a contract breach: a breach is not material unless it defeats the primary purpose of the contract. In Sjoberg, plaintiff entered into two contracts to purchase properties owned by defendants in order to build a home and develop a horse ranch. The primary issue was whether defendants' breach in failing to obtain a mortgage release, as required by the contracts, was material so as to support plaintiff's suspension of performance. The district court found that the purpose of the mortgage release provisions was to enable plaintiff to obtain financing to develop the horse ranch. On that basis, the court determined that defendants' breach was material and, therefore, that plaintiff was entitled to suspend his payments under the contracts. We affirmed the district court's finding of materiality because defendants' breach--failure to obtain the mortgage release--substantially defeated the purpose of the contract. Sjoberg, 759 P.2d at 969.

In VanUden, plaintiffs filed suit to remove restrictive covenants affecting property that they contracted to purchase from defendants. Defendants counterclaimed, seeking cancellation of the contract on the basis of plaintiffs' breach of the covenants. Plaintiffs moved for summary judgment on the counterclaim, asserting that cancellation was an improper remedy as a matter of

law; the district court denied the motion. We reversed, concluding that the covenants were only incidental to the main purpose of the contract for deed--delivery of the deed in exchange for payment of the purchase price. We opined that where the alleged breach of covenants was not so substantial and fundamental as to defeat the main object or purpose of the contract, and could be compensated in damages, a breach of the covenants did not warrant cancellation. VanUden, 615 P.2d at 224.

Our review of the District Court's finding of materiality in the case before us need not progress beyond the first prong of the DeSaye clearly erroneous test. Given the materiality test set forth above, no substantial evidence in the record supports the District Court's finding that the Burtons' breach was material.

The primary purpose of a buy-sell agreement is a restriction on the seller's ability to market the property for a specified time in exchange for the buyer's payment of earnest money and promise to complete the sale. See Payne Realty v. First Sec. Bank (Mont. 1992), 844 P.2d, 90, 94, 49 St.Rep. 1098, 1100. Nothing of record here suggests any other purpose for the buy-sell agreements at issue. The contract provision requiring the Burtons to hold the earnest money on deposit was incidental to the main purpose of the buy-sell agreements and breach of that provision did not substantially defeat, or even impact, the primary purpose of the contracts.

Indeed, Cady does not allege that the Burtons' failure to hold the earnest money on deposit substantially defeated the object of

11

the contracts. Cady testified that he would not have entered into the contracts had he known that the Burtons would spend the earnest money; in addition, he asserts that he was reasonably alarmed when he learned that the original earnest money had been spent. Cady's assertions do not address our test for materiality and, therefore, do not provide substantial evidence that the Burtons' breach was material in that it defeated the primary purpose of the contracts. We conclude that the District Court's finding that the Burtons' failure to keep the earnest money on deposit until closing constituted a material breach is clearly erroneous.

Based on its finding of material breach, the District Court concluded that Cady was entitled to "withdraw" from the contracts and to "request refund" of the earnest money. Thus, the District Court effectively rescinded the contracts regarding the Echo Lake Residence and the Burton Complex.

Our determination that the District Court's finding of material breach is clearly erroneous necessarily leads to our conclusion that the court improperly rescinded the contracts. Only a material breach can serve as a basis for rescinding a contract.

> A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom. A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement.

Reinke v. Biegel (1979), 185 Mont. 31, 35-36, 604 P.2d 315, 317 (citations omitted). Pursuant to Reinke, the Burtons' breach

12

provides Cady grounds to seek contract damages, but not rescission. Accordingly, we hold that the court erred in rescinding the contracts on the basis of material breach.

The District Court's award of $10,000 plus interest, reflecting the earnest money paid on the Echo Lake Residence and the Burton Complex, appears to be a component of the rescission. The objective of rescission is to return the parties to the same position they would have occupied had they not entered into the contract. Brunner v. LaCasse (1988), 234 Mont. 368, 371, 763 P.2d 662, 664. As a general rule, a party lawfully rescinding a contract is entitled to recover the monies paid under the contract, with interest from the date of the breach. Brunner, 763 P.2d at 664. Based on our determination that the District Court erred in rescinding the contracts, we conclude that the award of $10,000 plus interest, which is part and parcel of the rescission, is in error as well.

We affirm the District Court's conclusion that the contracts for the purchase and sale of the Echo Lake Residence and the Burton Complex prohibited the Burtons from spending the earnest money and its finding, on that basis, that the Burtons breached the contracts. We reverse the District Court's finding that the Burtons' breach was material and, consequently, its rescission of the contracts. Furthermore, because the District Court's dismissal of the Burtons' counterclaim appears to have been premised on the erroneous finding of a material breach, we reverse the court's dismissal of the counterclaim.

13

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

We concur:

_____
Justice

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Fred J. Weber concurs and dissents as follows:

I concur in the majority holding that the District Court correctly prohibited the Burtons from spending the earnest money. I dissent from the holding on Issue II, with regard to rescission of the contracts on the basis of material breach.

Of particular significance are the following provisions of the addendum of June 6, 1988, referred to in the majority opinion:

**PROVISIONS APPLICABLE TO EACH CONTRACT**

1. Closing shall be on August 1, 1988. Buyer may extend the closing date to December 1, 1988 by depositing, with seller, an additional $10,000.00 earnest money. Buyer may continue to extend closing indefinitely by continuing to deposit an additional $10,000.00 sum as earnest money every six months thereafter.

2. If, under the existing terms of the Buy-Sell Agreements, the parties agree that they will close the purchase of the Echo Lake residence or the Burton's Complex, but not both, then in this event, Buyer shall have refunded the earnest money attributable to the agreement which will not close. Buyer may, in any event, continue to extend the date of closing as agreed herein, provided he continues to deposit additional sums of $10,000.00 earnest money on August 1 and December 1, 1988 and every 6 months thereafter.

3. This sale is contingent upon the sale of Buyer's home in California. If seller receives an offer to sell either the Echo Lake residence, or the Burton's Complex, or both, then buyer shall have 72 hours notice to drop this contingency. If buyer declines to drop the contingency, then seller may sell any or all of the properties to a new purchaser. Upon the closing of the sale to the new purchaser, buyer shall receive a full refund of all earnest money paid to date. Until the sale to the new purchaser closes, the purchase agreements between buyer and seller shall remain in full force and seller shall continue to hold earnest money.

The majority opinion concluded that the primary purpose of a buy-sell agreement is a restriction on the seller's ability to market the property for a specified time in exchange for the buyer's payment of earnest money and promise to complete the sale.

The majority further concluded that nothing in the agreement suggests any other purpose for the buy-sell agreements. I disagree with that conclusion.

In the above quoted paragraph 3, the parties agreed that each of the three sales are "contingent upon the sale of buyer's home in California." That is a significant factor not addressed in the majority opinion. That provision gives the right to the buyer to demand a return of the earnest money in the event he is not able to sell his home in California. That is a primary purpose in addition to the marketing and sale of the property in Montana.

We emphasize that the above provisions establish this is not an ordinary buy-sell agreement in which there is an agreement to buy and to sell. Under paragraph 2, the parties in the future could agree that they would close the purchase of either Echo Lake residence or Burton's Complex, but not both. In that event the buyer was required to refund the earnest money attributable to the agreement which did not close. This again is a primary purpose or reason in addition to the marketing and sale.

In addition, under these paragraphs, buyer may continue to extend the date of closing by making additional $10,000 deposits. Even though such deposits are made, under the paragraphs, a primary purpose is to allow the deposits to be returned in the event that the buyer's property in California is not sold.

Last, I point out that under paragraph 3, if the seller receives an offer to sell either Echo Lake residence or Burton's Complex, or both, buyer has 72 hours to drop the contingent aspect

**16**

of the sale.  If the buyer declines to drop the contingency, then the seller may sell to a new purchaser.  A key point here is that upon the closing of the sale to the new purchaser, the buyer shall receive a "full" refund of all earnest money paid to date.  Clearly this is a primary purpose in addition to the sale of the property in Montana to the buyer.

In view of the foregoing express contingencies, it is clear to me that the spending of the earnest money indicates a very material problem with return of the earnest money if the sale is not completed.  The deposit referred to in the first issue of the majority opinion becomes of little significance if it is spent and no longer constitutes such a deposit.

I conclude that the seller's failure to hold the earnest money substantially defeated material objects and provisions of the contract.  I would affirm the conclusion of the District Court that the buyer was entitled to withdraw from the contract and request refund of his earnest money.  I would affirm the District Court's award of $10,000 plus interest to the buyer.

_____
Justice

Chief Justice J. A. Turnage concurs in the foregointg concurrence and dissent.

_____
Chief Justice

April 13, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Alan J. Lerner
Attorney at Law
P.O. Box 1158
Kalispell, MT  59903-1158

Robert B. Allison
Attorney at Law
130 Fifth St. E.
Kalispell, MT  59901

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy