No. 90-095

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

ROBERT C. LINCOLN and MEGAN LINCOLN,
Husband and Wife; JACK NOLAND and
BETH NOLAND, Husband and Wife,

Plaintiffs and Respondents,

-v-

WESLEY J. PIEPER and FAYE E. PIEPER,
Husband and Wife,

Defendants and Appellants.

FILED

SEP 20 1990

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Thomas W. Frizzell; Tipp, Frizzell & Buley;
Missoula, Montana

For Respondent:

Richard DeJana, Kalispell, Montana


Submitted on Briefs:   August 9, 1990

Decided:   September 20, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The defendants Wesley J. Pieper and Faye E. Pieper appeal the order of the Montana Eleventh Judicial District Court, Flathead County, granting partial summary judgment to plaintiffs Robert C. and Megan Lincoln and Jack and Beth Noland, holding that the Lincolns and Nolands have a right to use a water system passing through the defendants' and the plaintiffs' properties. We affirm.

The Piepers raise the following issues on appeal:

(1) Did the District Court err in holding that a conveyance of land and a water right "with appurtenances" from the parties common grantor created and transferred an easement for the plaintiffs to conduct water across the defendants' property and deliver it to the plaintiffs' properties?

(2) Did the District Court err in concluding that there were no genuine issues of material fact in this case that would preclude a grant of summary judgement?

The parties in this case are all owners of residential properties located along the western shore of Flathead Lake near Lakeside, Montana. The properties containing the disputed water conveyance system were once completely owned by Charles S. Bennett. In 1921 Bennett filed for domestic use water rights to serve approximately ten acres, including the three parcels currently owned by the Piepers, Lincolns and Nolands. In 1945 and 1946 Bennett subdivided the acreage conveying land with appurtenances as well as one-sixth and one-third interests in this domestic use water right to the Lincolns' and Nolands' predecessors,

2

respectively. At some time, as to which the record is unclear, Bennett constructed a system of pipes, pump, and tank for the purpose of drawing water from Flathead Lake and conveying it to the property. This system passed through properties that ultimately became the defendants' and both plaintiffs', to a tank located on property now outside the three parcels. The defendants drew water from that tank up until October, 1983.

The Piepers' predecessor Herlick conveyed the property on which the Pieper residence is located to the Piepers in 1977, "subject to easements for existing underground water lines." Property immediately surrounding the tank was transferred to the Piepers in 1984, from a predecessor, Sheffield, who also derived his title from Bennett, "subject to a permanent easement for the maintenance, repair, and replacement of the existing water tank and water pipelines, including the right of ingress and egress for such purposes (said water tank and pipelines are a part of a water distribution system, said system not serving the premises hereby conveyed.)"

The Piepers' predecessors maintained and repaired the water tank and system; some predecessors charged the other users a small fee to offset electrical costs of pumping, others chose not to charge. Ten to twelve families jointly used the water system in question along with the Piepers' predecessors in interest. The Lincolns' predecessors, the Morrisons, were receiving water through the system in 1959. Likewise, the Nolands' predecessor, Shea, used a spigot attached to the water pipe system for drinking and

3

household water beginning in 1968. The Nolands were verbally informed by Shea that drinking water was obtained via that spigot when they purchased from Shea in 1978.

The Piepers purchased their property in 1977 at a time when the spigot on the adjoining property was freely used by Shea. Shortly before the Lincolns purchased their property on April 2, 1982, the Piepers became aware that the Nolands had access to and used the water system. The Piepers also knew that the Lincolns had connected their new house to the pipe running through the Lincolns' property. After purchasing their property, the Piepers made no changes to the water system until approximately October 13, 1983, when the Piepers disconnected the water pipe leading from their property to the plaintiffs' properties, prohibiting any potable water from reaching either of the plaintiffs' properties. The Piepers refused the plaintiffs' demands to reconnect the pipes and refuse to allow the plaintiffs access to reconnect the pipes.

The plaintiffs filed for a preliminary injunction on July 17, 1984, requesting that the Piepers be restrained from interfering with the re-connection of water lines. The plaintiffs further requested that the injunction be made permanent. On April 26, 1985 the plaintiffs moved for partial summary judgment on the issue of whether the Piepers were liable for interfering with the plaintiffs' property rights. On April 10, 1986, the court entered its findings of fact and conclusions of law granting partial summary judgment to the plaintiffs on the issue of liability. The Piepers' subsequent motion to reconsider was denied. Eventually

4

after a trial the jury returned a verdict for the plaintiffs of $8,000 in actual damages and $10,000 in punitive damages. The Piepers now appeal the findings of fact and conclusions of law granting partial summary judgment on liability.

## I.

The Piepers primary contention on appeal is that the conveyance of a partial interest in a water right does not create ownership or a right to use the water system, pipes, pump, and tank, and further does not create an easement for maintenance and repair of the system by the plaintiffs. They essentially argue that while a conveyance of land with "appurtenances" includes a conveyance of a water right it does not include the transfer of the water conveyance system. This argument is based on the principle that a water right and a right to carry water across another's land, an easement, (most often in a ditch and thus often referred to as "ditch rights"), are distinct, separate rights of property. Harrier v. Northern Pacific Ry. Co. (1966), 147 Mont. 130, 134, 410 P.2d 713, 715. Because such rights are separate and distinct they may be conveyed separately and the loss of one does not necessarily require loss of the other. Connolly v. Harrel (1936), 102 Mont. 295, 300, 57 P.2d 781, 783. However, the rule that these property rights are separate and distinct and may be severed from one another does not affect the long standing rule that if a water right passes as an appurtenance, the means of conveyance of the water, unless in someway severed, likewise passes:

> [I]t is a rule, in accordance with natural justice and reason, that, where one sells a house or a farm, every

right will pass to the purchaser which is necessary to the complete use and enjoyment of the property conveyed, unless expressly reserved. Easements or servitudes are either personal or real, as, for instance, when a right of way is granted in favor of a particular person or persons, the sale of the estate will not carry with it the right which is confined to the persons; but where, by destination a right of way attaches to and in favor of a certain house, farm, ranch, or plantation or a certain right of drainage exists in favor of the farm, or the use of a certain ditch and water for irrigating of a farm, they will pass by the deed, even without the use of the word "appurtenances"; for the acquisition of the easement or servitude was intended for the benefit of the estate, and by destination is to be considered as incidental to the use of and as part and parcel of the realty.

Tucker v. Jones (1888), 8 Mont. 225, 231, 19 P. 571, 573. Thus, this Court has held that the conveyance of a tract of irrigated land with its appurtenances also conveys the ditch, as well as the water right, necessary to the cultivation, use, and enjoyment of the land, just as fully as though the grantor had described it in express terms in the deed itself. Mussleshell Valley Farming and Livestock Co. v. Cooley (1929), 86 Mont. 276, 294, 283 P. 213, 218; see also Castillo v. Kunnenmann (1982), 197 Mont. 190, 196, 642 P.2d 1019, 1024; Sections 70-17-101(11), 70-15-105, MCA. Clearly, use of the water conveyance system in this case is necessary for the plaintiffs to exercise their water rights and thus should be "considered as incidental to the use of and part and parcel of the realty." Tucker, supra. Furthermore, examination of the chain of title and inspection of the property upon purchase by the Piepers would have revealed the existence of plaintiffs' interest in the water system, and a reasonable inquiry would have disclosed that the Piepers' land was "burdened with easements, in favor of

6

Plaintiffs, for access to the water system, pipe, pump and tank, for maintenance and repair and use for pumping water from a jointly-held water appropriation." (Conclusion of Law No. 2). Thus, the Piepers had at least constructive, if not actual, notice that they took their property subject to easements in favor of the plaintiffs. See, e.g., Otero v. Pacheco (1980), 94 N.M. 524, 612 P.2d 1335. The deeds indicate that the grantors intended the plaintiffs' predecessors in interest to have an easement in the water system necessary for the beneficial enjoyment of their property, thus these easements were appurtenant to the premises conveyed.

## II.

Finally, the Piepers claim in their brief that there are genuine issues of material fact regarding whether the plaintiffs' predecessors use of the water system was permissive that would preclude summary judgment. See Rule 56(c), M.R.Civ.P. We note that in the proceedings below the Piepers also moved for summary judgment, thereby acknowledging that no genuine issues of material fact existed. More importantly, any facts regarding permissive use are only relevant toward the issues of whether the plaintiffs had acquired either a prescriptive right in the use of the water system, see e.g. Thomas v. Barnum (1984), 211 Mont. 137, 684 P.2d 1106, or whether the plaintiffs had a mere license to use the system as opposed to an easement by implication. Because we have ruled above that the use of the water system is an easement appurtenant to the water right and the land conveyed, any issue of

7

permissive use is rendered immaterial to the case.

The plaintiffs have a property interest in the water system as an appurtenance to their properties, and the Piepers may not interfere with the exercise of such rights. However, this opinion does not in any way determine how any costs of maintenance and pumping should be allocated among the parties using the system as such matter was not fully addressed below.

The order of the District Court is

**AFFIRMED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8