No. 05-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 265

_____

SECURITY ABSTRACT & TITLE COMPANY,

       Plaintiff,

    v.

SMITH LIVESTOCK, INC.,

       Defendant and Respondent,

    and

VX RANCH, INC.,

       Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                    In and for the County of Custer, Cause No. DV 02-100,
                    The Honorable Joe L. Hegel, Presiding Judge.

COUNSEL OF RECORD:

       For Appellant:

              Kyle A. Gray, James L. Jones and Jason S. Ritchie, Holland & Hart, LLP,
              Billings, Montana

       For Respondent:

              A. Lance Tonn, Lucas and Tonn, Miles City, Montana

_____

                            Submitted on Briefs:  May 10, 2006
                                   Decided:  October 17, 2006

Filed:

_____
                          Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     VX Ranch, Inc., appeals a judgment entered in the Sixteenth Judicial District Court, Custer County, in favor of Respondent Smith Livestock, Inc., ordering the Clerk of the District Court to pay Smith Livestock a $100,000.00 earnest money deposit interplead by Security Abstract and Title Co., and awarding attorney fees and costs to Security Abstract and Smith Livestock.

¶2     This dispute arises between two corporations that entered into an agreement for the sale and purchase of ranch property. The District Court, after considering the evidence, held that the agreement in question was not subject to a contingency that VX Ranch obtain a loan to finance the transaction and thus Smith Livestock was entitled to the earnest money deposit.

¶3     Alternatively, the District Court found as a matter of fact that VX Ranch did not make reasonable efforts to obtain financing, and thus the result would be the same if there had been a financing contingency in the agreement. While the District Court's alternate holding is a determination of fact that is supported by substantial evidence in the record, and thus not clearly erroneous, discussion of this issue is not required as we agree with the District Court that the agreement was not subject to a condition precedent that VX Ranch obtain third party financing.

¶4     On December 7, 2001, VX Ranch sent a written offer to Smith Livestock titled "Buy-Sell Agreement." The document is a standard form contract developed by the Montana Association of Realtors. The blank portions of the form applicable to this transaction were filled in by a licensed real estate agent.

¶5      Under the original Buy-Sell Agreement, VX Ranch was to pay a total of $10.3 million for the properties.  Included in this amount was $100,000 in earnest money to be placed in escrow.  The remaining $10.2 million was to be an "additional cash payment, payable on or before closing."  The relevant portions of the Buy-Sell Agreement appear as follows:

[Line 33]  PURCHASE PRICE AND TERMS:
[Line 34]  Total Purchase price is *Ten million three hundred thousand*   U.S. Dollars
[Line 35]  ($ *10,300,000*) payable as follows:
[Line 36]  $      *100,000*  earnest money to be applied at closing.
[Line 37]  $ *10,200,000*   as additional cash payment, payable on or before closing.
[Line 38]  $ _____  balance of the purchase price will be financed as follows:
[Line 39] ☐ Conventional  ☐ Other Financing  ☐ Seller Financing  ☐ Assumption  ☐ Home equity
[Line 40] _____
[Line 41] _____
[Line 42] _____
[Line 43] _____
[Line 44] _____
[Line 45] _____
[Line 46] Buyer's offer is contingent upon obtaining the financing specified herein.  If financing cannot be obtained within the time
[Line 47] set forth in the TIME FOR COMPLETION section, this offer is terminated and the earnest money will be refunded to the
[Line 48] Buyer.

(Italicization indicates handwriting).

¶6      After several counteroffers, the two parties came to an agreed price of eleven million dollars.  Except for several modifications not relevant to this appeal,[1] all terms and conditions listed in the Buy-Sell Agreement were incorporated in the final counter offer executed by both VX Ranch and Smith Livestock.  Together, the documents represent the final sale "Agreement."[2]  Pursuant to the Agreement, VX Ranch deposited

---

[1] For example, the handwritten portions of lines 34, 35, and 37, were modified to reflect the final sale price.  However, lines 36 and 38-45 were not modified.

[2] The Buy-Sell Agreement, counter offers, and addendum will hereinafter be referred to together as the "Agreement."

the $100,000 earnest money with Security Abstract & Title Company.  Under the Agreement, the closing date for the transaction was March 1, 2002.

¶7    On March 15, 2002, both parties signed an "Addendum to Buy/Sell Agreements and Counter Offers" ("Addendum"), extending the closing date to April 4, 2002.  The Addendum stated, in its entirety:

> WHEREAS, SMITH LIVESTOCK INC[.], as "SELLER" and VX Ranch, Inc., as "PURCHASER", have entered into a Buy/Sell Agreement involving the sale and purchase of property commonly referred to as Trail Creek Ranch in Custer and Carter Counties, Montana, and Cohagen Ranch in Garfield [County], Montana, and
> WHEREAS there has been a delay in obtaining the financing due to no fault of either party, and
> WHEREAS both parties agree to extend the closing date on Line 57 of the Agreement to *April 4th*, 2002 in order to allow for a reasonable amount of time to complete the financing.
> NOW THEREFORE, it is mutually understood and agreed as follows:
> 1. The foregoing recitals are made a part hereof.
> 2. The SELLER and the PURCHASER agree that the date of closing shall be *April 4th*, 2002.
> 3. All other provisions of the Buy/Sell agreement shall remain in effect as if the new closing date were part of the original writing.
> DATED March 15, 2002.

(Italicization indicates handwriting).

¶8    Despite the extension of the closing date, the purchase of the ranch properties was not completed.  Smith Livestock and VX Ranch each demanded the earnest money, and Security Abstract and Title Company filed this action in interpleader.

¶9    VX Ranch has contended at all times during this litigation that the Agreement included a condition precedent that it obtain a loan from a third party lender to finance some unspecified part of the purchase price prior to the Agreement becoming effective.

4

However, the District Court held that the Agreement did not contain a financing contingency. VX Ranch now appeals, claiming that the District Court erred in this conclusion.

¶10 As a preliminary matter, VX Ranch argues that the issue of whether the Agreement contained a financing contingency was not pled, and the District Court, therefore, should not have considered whether there was a financing contingency.[3] To support this notion, VX Ranch cites *H-D Irrigating v. Kimble Properties*, 2000 MT 212, 301 Mont. 34, 8 P.3d 95, in which this Court stated, "A district court does not have jurisdiction to grant relief outside of the issues presented by the pleadings[.]" *H-D Irrigating*, ¶ 22 (quoting *Ryan v. City of Bozeman*, 279 Mont. 507, 511, 928 P.2d 228, 230 (1996) (citing *Old Fashion Baptist Church v. Mont. Dept. of Rev.*, 206 Mont. 451, 457, 671 P.2d 625, 628 (1983))).[4]

¶11 A court may determine that a party has waived its right to assert a legal theory or factual issue where that theory or issue is not specified in the pleadings or pretrial order. *Plath v. Schonrock,* 2003 MT 21, ¶ 55, 314 Mont. 101, ¶ 55, 64 P.3d 984, ¶ 55. However, the pretrial order should be liberally construed to permit any issues at the trial that are embraced within the language. *Bell v. Richards*, 228 Mont. 215, 217, 741 P.2d 788, 790 (1987). Even where unspecified, the district court may still allow a theory or

---

[3] VX Ranch argues the District Court had "jurisdiction" to decide only whether it made a reasonable attempt to obtain financing for the purchase.

[4] The language in *H-D Irrigating* and subsequent cases, to the extent they say that a court loses "jurisdiction" over an issue that is not specified in the pleadings or pretrial order, is incorrect. To clarify this mischaracterization we look to the more recent case law discussed herein.

issue to be introduced into the litigation where the theory or issue can be implied from the pleadings or pretrial order. *Plath*, ¶¶ 50, 55 (citing *Nentwig v. United Industry, Inc.*, 256 Mont. 134, 139, 845 P.2d 99, 102-103 (1992)). As stated in *Plath*:

> [W]hile the pre-trial order may be the beginning, it is never the end of a matter of this sort. It normally controls the subsequent course of the action, but not if it is modified at the trial to prevent manifest injustice. The judicial function does not terminate upon discovery that an issue is unspecified, but extends to a determination as to whether the ends of justice implore that the issue nonetheless be introduced into the litigation. This frequently involves a delicate balance of competing considerations, variable from case to case, in order that the decision may be soundly made. And absent perceptible irregularity in a process so largely discretionary, we are loath to disturb the result.

*Plath*, ¶ 50 (quoting *Nentwig*, 256 Mont. at 139, 845 P.2d at 102-103) (internal quotation omitted). Thus, where a legal theory or factual issue is at least implicitly included in the pretrial order, the district court may allow the introduction of evidence to support the theory or issue.[5] *Plath*, ¶ 55.

¶12 We conclude the District Court acted within the scope of the pleadings when it considered whether a financing contingency was included in the Agreement. Smith Livestock did not waive its right to assert the theory that there was no financing contingency. In its answer to Security Abstract and Title Company's complaint, Smith Livestock stated that the District Court should "declare that Smith Livestock is entitled to the earnest money together with accrued interest." This statement alone put VX Ranch on notice that entitlement to the escrow money was in dispute and thus, by implication, the terms and conditions in the controlling Agreement would inevitably be at issue in this

---

[5] This is a discretionary power of the district court, separate from that granted under Rule 15(a), M.R.Civ.P., to allow a party to formally amend its pleadings.

case. In the District Court's pretrial order, which was signed and filed the same day that the District Court denied VX Ranch's motion for summary judgment, Smith Livestock again contended that "it should be entitled to keep the earnest money pursuant to the terms of the Buy-Sell Agreement." Thus, at a minimum, it can be implied from the pleadings and pretrial order that the interpretation of the Agreement and whether it contained an express financing contingency was preserved for the District Court's consideration. *See Plath*, ¶¶ 50-51; *see also H-D Irrigating*, ¶ 23 (pleadings and pretrial order, although not expressly referencing constructive fraud, gave parties sufficient notice of the issue, and the district court, therefore, did not err in considering the issue).

¶13   Further, a review of the District Court transcript shows that evidence of the parties' intent in creating the Agreement, specifically whether it was contingent upon VX Ranch obtaining third party financing, was presented throughout the trial. VX Ranch made no contemporaneous objection to the evidence concerning whether the Agreement was contingent upon its obtaining this financing.

¶14   During the course of the litigation, VX Ranch filed a motion for summary judgment claiming that the Agreement was subject to a contingency that it obtain financing from a third party, and thus it was entitled to the return of its earnest money deposit as a matter of law. Smith Ranch, in opposition to the motion for summary judgment, argued that a material issue of fact was present as to whether VX Ranch used reasonable efforts to obtain financing. The District Court agreed with Smith Ranch, and denied VX Ranch's motion for summary judgment. The dissent would seem to say that because Smith Livestock did not argue that there was no financing contingency in the

7

Agreement in its opposition to VX Ranch's motion for summary judgment, it was somehow precluded from making this an issue at trial. However, the denial of a motion for summary judgment does not settle or even tentatively decide anything about the merits of the claim. Such a denial is a pretrial order that decides only that the case should go to trial. *Switzerland Cheese Assn., Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S. Ct. 193, 195 (1966).

¶15 Contrary to the dissent's statement at ¶ 32, the issue whether the Agreement contained a condition precedent that VX Ranch obtain third party financing, was an integral part of the trial. This Court has previously held that when evidence and issues extrinsic to the pleadings are admitted at trial without objection, the failure to object is an implicit consent to the litigation of those issues. *Glacier Nat. Bank v. Challinor*, 253 Mont. 412, 417, 833 P.2d 1046, 1049 (1992). Thus, VX Ranch waived any right to claim the alleged contingency was not at issue by failing to object to Smith Livestock's introduction of evidence refuting any such contingency. *Lemley v. Bozeman Community Hotel Co.*, 200 Mont. 470, 476, 651 P.2d 979, 981-982 (1982).

¶16 VX Ranch next argues that the District Court erred in finding that the Agreement did not include a contingency that VX Ranch obtain third party financing. The construction and interpretation of a written contract is a question of law. Where a contract has been reduced to writing, the intention of the parties is to be ascertained, if possible, from the writing alone. Section 28-3-303, MCA; *Wurl v. Polson School Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282, ¶ 16, 127 P.3d 436, ¶ 16. Thus, where a

8

contract's terms are clear and unambiguous, a court must apply the language as written. *Wurl*, ¶ 16.

¶17    The initial determination of whether an ambiguity exists in a contract is a question of law for the court.  An ambiguity exists where the language of a contract, as a whole, is reasonably subject to two different interpretations.  When a contract is ambiguous, the intent of the parties in creating the contract becomes a question of fact for the court to decide in a case that is tried without a jury.  *Wurl*, ¶ 17.

¶18    To support its argument that the Agreement is subject to the contingency that it obtain third party financing, VX Ranch repeatedly quotes the following language:

> Buyer's offer is contingent upon obtaining the financing specified herein.
> If financing cannot be obtained within the time set forth in the TIME FOR
> COMPLETION section, this offer is terminated and the earnest money will
> be returned to the Buyer.

¶19    VX Ranch claims that this language is clear and unambiguous in conditioning the Agreement upon financing.  However, as noted by the District Court, this language conditions the Agreement upon the "financing *specified herein*."  (Emphasis added).  As evidenced by the excerpt from the Agreement noted in ¶ 5 above, the Agreement does not specify any financing.  Those parts of the Agreement that were applicable to financing (e.g., lines 38-45) were simply left blank.  At no point does the Agreement indicate that payment of the balance of the purchase price (after applying the earnest money) required that VX Ranch obtain third party financing.  To the contrary, line 37 specified that the balance would be made as an "additional cash payment, payable on or before closing."

¶20    The dissent, at ¶ 33, posits that the form language stating that the "offer is

9

contingent on obtaining the financing specified herein," clearly and unambiguously establishes that financing was required, and assumes that "financing" refers to some type of third party financing, even though none was specified. However, the form contract does provide boxes to specify the type of financing required, and also spaces to specify the particular financing, all of which are left blank.

¶21 The dissent goes on to state that the language which predicates the termination of the Agreement, and the refund of the earnest money, on obtaining financing within the time set forth in the Agreement's TIME FOR COMPLETION section, makes it clear that obtaining financing was a condition precedent to completing the sale. However, to the contrary, the TIME FOR COMPLETION section of the Agreement bolsters the conclusion that no third party financing was contemplated in the original Agreement. Such section states:

> TIME FOR COMPLETION: If *third party financing of the type specified herein* is required by the terms of this Agreement (*includes* assumptions, contracts for deed, and *lender financing*), the closing shall occur on the date specified or as soon thereafter as financing is completed, but no later than 30 days after the stated closing date.

(Emphasis added). The TIME FOR COMPLETION clause of the Agreement begins with the word "If," and the condition is that there be a type of financing specified. Of course, no type of third party (lender) financing is specified. Thus, by its plain terms, the TIME FOR COMPLETION section is not applicable, and by reference neither is that section that makes VX Ranch's offer contingent on its obtaining financing.

¶22 The Agreement further states at lines 67-70:

FINANCING CONDITIONS AND OBLIGATIONS: BUYER'S REPRESENTATION OF FUNDS: Buyer represents that they have sufficient funds for the down payment and closing costs to close the sale in accordance with this Agreement and are *not relying upon any contingent source of such funds unless otherwise expressly set forth herein.*

(Emphasis added). This is the third section of the form agreement that provides that unless some type of third party financing is set out in the Agreement, it is not contingent on the VX Ranch obtaining such. In the Agreement, VX Ranch, the buyer, represented that it had sufficient funds to close the sale and was not relying on any contingent sources. Because no financing is specified in the Agreement, and VX Ranch represented that it had sufficient funds to close the sale, we must conclude that this portion of the Agreement is unambiguous in that it requires the buyer to have "sufficient funds for . . . closing costs" without any "contingent sources" of financing.

¶23 Also, as noted by the District Court, the printed form agreement contains a section entitled "Loan Application" which provides that if the buyer, VX Ranch in this instance, fails to make a written application for financing and pay a lender any required fees by a time to be inserted in the form, the buyer would be in breach of the Agreement. The blank for insertion of the time by which this must be done is marked "N/A." This is a further indication that VX Ranch was not going to apply for a loan and thus there was to be no lender financing.

¶24 VX Ranch argues, however, that the Addendum portion of the Agreement, set forth at ¶ 7 above, supports its argument that the Agreement was from the beginning conditioned upon its obtaining financing. As it was executed by both parties, the Addendum was made a part of the Agreement and the entire Agreement, including the

11

Addendum, must be analyzed to determine if it required third party financing as VX Ranch contends. Section 28-2-1602, MCA.

¶25 The relevant portion of the Addendum states:

> [T]here has been a delay in obtaining the financing due to no fault of either party, and
> . . . both parties agree to extend the closing date on Line 57 of the Agreement to *April 4th*, 2002 in order to allow for a reasonable amount of time to complete the financing.

(Italicization indicates handwriting). Thus, the closing of the transaction was extended to allow for more time to complete "the financing." According to *Random House Webster's Unabridged Dictionary* 719 (2nd ed., Random House 1987), the term "financing" means:

> 1. the act of obtaining or furnishing money or capital for a purchase or enterprise. 2. the funds so obtained.

VX Ranch was obviously required to pay for the property in question--that is, to obtain the necessary financing. Nowhere in the Agreement, including the Addendum, is it specified that completing the financing means that VX Ranch must obtain a loan from some third party. Simply extending the closing date to allow for more time for VX Ranch to come up with the necessary funds does not add such a contingency. It would have been a simple matter for VX Ranch to insert in its offer to buy the property, or in the Addendum, a statement that the sale was contingent on its being able to secure a loan for all or a portion of the purchase price. It did not do so, and thus such a condition precedent was not a part of the Agreement.

¶26 When VX Ranch requested an extension to obtain financing, it was in Smith Livestock's best interest to agree. Smith Livestock had changed its position in reliance

on the Agreement. It had sold fifty semi-trailer loads of its cattle, as well as much of its machinery. These actions answer the dissent's question posed at ¶ 33, of why Smith Livestock agreed to a 30-day extension of the closing date to preserve the sale, even though the Agreement was not subject to a condition precedent that VX Ranch obtain third party financing.

¶27 David Smith, the President of Smith Livestock, testified that VX Ranch's request to extend the closing date was the first knowledge he had that VX Ranch was seeking a loan. When asked why he agreed to extend the closing date, Smith testified:

> Basically I felt at that time that they were still sincere and that, you know, they just needed just a little more time to wrap this thing up. That's the story they gave me.

This is consistent with the language of the Addendum, which does not expressly condition closing upon VX Ranch's ability to obtain financing. Although Smith Livestock's officers were made aware of VX Ranch's intention to seek a loan when VX Ranch asked to extend the closing date, the Addendum does not say that Smith Livestock agreed to condition the completion of the sale on VX Ranch securing third party financing.

¶28 We therefore conclude that the District Court did not err in holding as a matter of law that the Agreement was not contingent upon the ability of VX Ranch to obtain a loan to make the final payment.

¶29 Affirmed.

/S/ JOHN WARNER

13

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice Patricia O. Cotter dissents.

¶ 30   I dissent.  I would conclude that the Findings of Fact, Conclusions of Law and Judgment of the District Court are intrinsically inconsistent, and that the District Court erred in its analysis and conclusions.  I would reverse and remand with instructions to enter judgment for VX Ranch.

¶ 31   The Court notes at the outset of its Opinion that the District Court made alternative findings:   either the Agreement between the parties was not subject to a financing condition, or—if it was—VX Ranch did not make reasonable efforts to obtain such financing.  The Court then proceeds to dismiss the latter alternative altogether, in favor of the former.  ¶ 3.  In arriving at this conclusion, the Court selectively ignores what actually happened prior to and at trial, as well as the clear language of the contracts.

¶ 32    Prior to trial, VX Ranch moved for summary judgment. In denying its motion, the District Court concluded that a disputed issue of fact existed for resolution at trial—i.e., whether VX Ranch used reasonable efforts to obtain financing. In fact, the court said in its order denying summary judgment that "The [c]ourt interprets the phrase in the second sentence [of the paragraph from the Buy/Sell Agreement quoted by the Court at ¶ 18] '[i]f financing cannot be obtained' as implying a requirement that VX use at least reasonable efforts to obtain the required financing." Thus, the District Court clearly acknowledged that financing *was* contemplated, and that there was a triable issue of fact as to whether VX Ranch used reasonable efforts to secure the required financing. However, the District Court then inexplicably recanted this conclusion in its Findings of Fact and Conclusions of Law. For the reasons set forth below, it erred in doing so.

¶ 33    The Buy/Sell Agreement, together with the Addendum, clearly establishes the existence of a financing contingency. If the failure to check one "form of financing" box or another in the Buy/Sell form raised any genuine question, it was effectively refuted by the retention of the form language below to the effect that "If financing cannot be obtained within the time set forth in the TIME FOR COMPLETION section, this offer is terminated and the earnest money will be returned to the Buyer." And if the inclusion of this language was not enough to dispel any ambiguity, then surely the Addendum—a contract prepared and signed by both parties (as opposed to a form document) specifically to address financing—puts the issue to rest. The Addendum, the language of which is set forth verbatim in ¶ 7 of the Court's Opinion, references the Buy/Sell and then states as a preamble: "WHEREAS there has been a delay in obtaining *the financing*

15

due to no fault of either party," and "WHEREAS both parties agree to extend the closing . . . in order to allow for more time to complete *the financing*." (Emphasis added). If there was no financing condition, then why sign an Addendum delaying the closing until it could be obtained?

¶ 34    The Court attempts to explain away the Addendum at ¶ 25, in effect saying, that the phrase "to allow for more time to complete the financing" really means "to allow more time for the Buyer to come up with the necessary funds from his own pocket." Respectfully, this interpretation is a stretch, especially when read against the District Court's own pre-trial conclusion that the parties contemplated that the Buyer would use reasonable efforts "to obtain the required financing" (*see* ¶ 32), and in light of the substantial relevant evidence admitted at trial as to the efforts undertaken by VX Ranch to secure outside financing. *See* ¶ 36. The Court's reading of the phrases "obtaining the financing" and "complete the financing" as set forth in the Addendum simply cannot, in my view, be reconciled with the words *chosen* by the parties for the Addendum; moreover, it flies in the face of § 1-4-101, MCA, (we are to ascertain and declare what is in substance contained in the instrument); § 1-4-102, MCA, (we are to construe an instrument in accordance with the circumstances under which it is made so that the judge is "placed in the position of those whose language he is to interpret"); § 1-4-103, MCA, (where general and particular provisions are inconsistent, the latter are paramount); and, especially, § 1-4-105, MCA, (where an instrument consists partly of written words and partly of printed words and the two are inconsistent, the former controls the latter) and § 28-3-205, MCA, (where the purely original language and the printed form are

16

repugnant, "the latter must be so far disregarded"). If we simply read the words the parties selected, and do so in accordance with our law on the construction of instruments, the conclusion that financing was contemplated as a condition of the contract is inescapable. The District Court's and this Court's conclusion to the contrary is patent error, in my judgment.

¶ 35   The Court also errs in reading more into the language of the Agreement than it should. At ¶ 19, the Court notes that line 37 of the Agreement specified that the balance of the purchase price would be by way of "cash payment," payable at closing. This language does not support the Court's conclusion that no financing was contemplated, because, whether there is outside financing or not, there is always a cash payment at closing from some entity. Similarly, at ¶ 22, the Court misconstrues the import of the language at lines 67-70 of the Agreement. The language italicized by the Court does not suggest there would be no outside sources of financing; rather, this paragraph means only what it says—i.e., Buyer has sufficient funds *for the down payment and closing costs*, and is not relying upon contingent sources for payment of these items.

¶ 36   I would conclude both that financing was clearly contemplated as a condition of the contract, and that VX Ranch used reasonable efforts to obtain it. The evidence at trial established that VX contacted a number of lenders, it negotiated with Farm Credit Services down to the wire, and indicated its willingness to collateralize the purchase with securities in addition to the property. This being the case, and under the terms of the Buy/Sell as extended by the Addendum, the contract terminated and the earnest money should have been returned to VX Ranch.

¶ 37   Based upon the foregoing, I would reverse and direct the District Court to enter judgment for VX Ranch.  I dissent from our refusal to do so.

/S/ PATRICIA COTTER

Chief Justice Karla M. Gray and Justice James C. Nelson join in the dissenting Opinion of Justice Patricia O. Cotter.

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON